UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTOPHER DAWSON,** | ) |
| | ) |
|      **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | )    Case No. 3:19-cv-01172-GCS |
| **JOSEPH MARTIN and DEREK CLELAND,** | ) |
| | ) |
| | ) |
|      **Defendants.** | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Christopher Dawson, an inmate in the custody of the Illinois Department of Corrections ("IDOC") at Pinckneyville Correctional Center, alleges that Defendant Joseph Martin violated Plaintiff's Eighth Amendment rights through a consistent pattern of harassment, while Defendant Derek Cleland violated Plaintiff's Eighth Amendment rights by using excessive force against him. (Doc. 1). On October 28, 2019, Plaintiff brought this case under 42 U.S.C. § 1983 and 28 U.S.C. § 1331. *Id*. Now pending before the Court is a motion for summary judgment filed by Defendants Martin and Cleland, in which they argue that Plaintiff failed to exhaust his administrative remedies before the commencement of this suit. (Doc. 23, p. 1). Plaintiff responded on November 25, 2020 (Doc. 32), and the Court held a hearing on the motion on January 11, 2021. Following the

hearing, Defendants supplemented the record on January 13, 2021. (Doc. 36). For the reasons outlined below, Defendants' motion for summary judgment is **GRANTED.**

## FACTUAL BACKGROUND

Plaintiff initially outlined an extensive pattern of harassment and retaliation by various defendants in his complaint. (Doc. 1). However, as pertains to the present case, only two counts survived preliminary review.[1] (Doc. 10, p. 4). In his first count, Plaintiff alleges that on September 5, 2019, Defendant Martin harassed Plaintiff by placing a blanket over his cell window, shutting off water to his cell, showing him a note with the name of his deceased mother, and telling the nurses not to check up on him. (Doc. 10, p. 2). Though this count describes Defendant Martin's actions specifically, Plaintiff asserts that other officers engaged in a similar pattern of harassment against him prior to September 5, 2019. *See* (Doc. 10, p. 2). In his second count, Plaintiff claims that on September 10, 2019, Defendant Cleland escorted Plaintiff from his cell to another room, where Defendant Cleland began beating Plaintiff while other officers watched. (Doc. 10, p. 3).

On September 2, 2019, Plaintiff filed emergency grievance number 2795-09-19 ("grievance 2795"), which complained of harassment by Internal Corrections Officer Bennet and "others." (Doc. 36, Exh. 1). The grievance counselor denied the grievance on September 3, 2019, and there is no evidence that Plaintiff appealed the grievance counselor's decision to the Administrative Review Board ("ARB"). (Doc. 36, Exh. 1).

---

[1]  The Court severed the portion of Plaintiff's complaint alleging violations against Lieutenant C. Wall into another case. (Doc. 10, p. 4).

Plaintiff also filed an emergency grievance 2784-90-19 ("grievance 2784"), which was potentially relevant to his complaint. (Doc. 36, Exh. 2). Pinckneyville Correctional Center does not have a record of grievance 2784. (Doc. 36, Exh. 2). However, Pinckneyville Correctional Center does note that the warden denied Plaintiff's grievance as a non-emergency. (Doc. 36, Exh. 2). There is no evidence that Plaintiff re-filled his grievance using the regular grievance procedure. (Doc. 36, Exh. 2). On October 28, 2019, Plaintiff brought suit against both Defendants. (Doc. 1).

Defendants first filed a motion for summary judgment on the issue of exhaustion of remedies on September 21, 2020. (Doc. 23). During the hearing on the motion, the Court inquired into two potentially relevant grievances, neither of which Defendants had supplied in their motion: grievance 2795 and grievance 2784. The Court granted Defendants leave to supplement the record with these grievances. On January 13, 2021, Defendants filed a notice containing a copy of grievance 2795. (Doc. 36, Exh. 1). However, a search of Pinckneyville Correctional Center's records did not return a copy of grievance 2784. (Doc. 36, Exh. 2). Instead, Defendants submitted a declaration from grievance counselor Catherine Hale, explaining that Pinckneyville Correctional Center did not have a copy of the grievance because, after the grievance was deemed a non-emergency, Plaintiff did not refile the grievance through the normal channels. (Doc. 36, Exh. 2).

## LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). In order to survive a motion for summary judgment, the non-moving party must provide admissible evidence which a reasonable jury or court could find creates a dispute of genuine material fact. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Traditionally, the Court's role in determining a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but is instead to determine whether there is a genuine issue of material fact. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that a judge, rather than a jury, should determine whether factual issues relating to the defense of the failure to exhaust administrative remedies exist. 544 F.3d 739, 741 (7th Cir. 2008). If the Court determines that a prisoner did not exhaust his administrative remedies, the Court will outline one of three potential outcomes: (a) if the plaintiff still has time to do so, the plaintiff must go back and exhaust his administrative remedies; (b) if the plaintiff's failure to exhaust was innocent, as where prison officials prevent a prisoner from exhausting his remedies, the plaintiff must be given another chance to exhaust; or (c) if the failure to exhaust was the prisoner's fault, the case is over. *Id.* at 742.

The Prison Litigation Reform Act ("PLRA") governs lawsuits filed by inmates and states that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a).  In order to satisfy the PLRA's exhaustion requirement, prisoners must strictly adhere to the grievance process. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prisoners must exhaust their remedies before filing a suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file a suit and then exhaust administrative remedies while that suit is pending. *Id*. Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Prisoners must follow a prison's administrative rules when exhausting their remedies. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") in order to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE. § 504.800, *et seq*. The grievance procedures require prisoners to submit a grievance to a counselor within sixty days of discovering the underlying incident. *See* 20 ILL. ADMIN. CODE § 504.800. These grievances must state the "factual details regarding each aspect of the offender's complaint including what happened, when, the name of any individual involved, and where the incident occurred." 20 ILL. ADMIN CODE § 504.810(a). If a prisoner is not satisfied with the counselor's response to the grievance, then that prisoner can submit a formal grievance to the prison's grievance officer. *Id*. at (a)-(b). The officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within two months of receipt of the grievance, when reasonably

feasible under the circumstances, the grievance officer must report findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504. 830(e). If the prisoner is still not satisfied with the CAO's decision, they can formally appeal to the Director through the ARB within thirty days of the CAO's decision. *See* 20 ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to their appeal. *Id.* The ARB then submits its recommendation to the Director who is responsible for issuing the IDOC's final decision. *See* 20 ILL. ADMIN. CODE § 504.850(f).

The grievance process also allows for an inmate to file an emergency grievance directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO may determine if there is a substantial risk of imminent personal injury or other serious harm to the offender. *Id.* If the CAO determines that the grievance is a non-emergency, the prisoner is notified in writing that they may resubmit the grievance as a non-emergency and move forward with the standard grievance process. *See* 20 ILL. ADMIN. CODE. § 504.840(c).

The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). This allows the prison administration an opportunity to fix the problem or to reduce damages and to shed light on factual disputes that may arise in litigation. *See Pozo*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing an untimely

or otherwise procedurally defective grievance. *See Woodford*, 548 U.S. at 83. Unless a prisoner completes the administrative review process by following the rules established for that process, exhaustion has not occurred. *See Pozo*, 286 F.3d at 1023.

## ANALYSIS

In their motion for summary judgment, Defendants argue that Plaintiff failed to appeal any grievances to the ARB during the relevant time period: September 5, 2019, when the underlying incidents first occurred, through October 28, 2019, when Plaintiff first filed his complaint. (Doc. 24, p. 3-4). Alternatively, Defendants state that even if Plaintiff had filed an appeal of one of the relevant grievances, Plaintiff could not have exhausted his administrative remedies because Plaintiff initiated this suit less than two months after the incident would have occurred, thus not allowing for sufficient time to lapse for the full exhaustion process to occur. (Doc. 24, p. 4). Plaintiff responds by stating that he used the grievance procedure to the best of his ability, but Pinckneyville Correctional Center mishandled his grievances. (Doc. 32, p. 3). However, Plaintiff does not allege how his grievances were mishandled, nor does he provide evidence of such mishandling. The Court finds that Plaintiff did not exhaust his administrative remedies because he failed to appeal grievance 2795 and failed to file grievance 2784 as a non-emergency grievance. Accordingly, the motion for summary judgment is granted.

### I. Whether Plaintiff Exhausted his Administrative Remedies through Grievance 2795

There are three circumstances in which an administrative remedy is not capable of use to obtain relief (and therefore unavailable): (i) when the remedy operates as "a simple dead end," in which officers are unable or unwilling to provide relief; (ii) when, though mechanisms exist through which inmates can technically obtain relief, the mechanisms are so opaque no ordinary inmate can navigate them; or (iii) when prison administrators thwart an inmate's attempt to take advantage of available remedies through "machination, misrepresentation or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *see also Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000); *Pavey*, 544 F.3d at 742; *Dole* 438 F.3d at 808. When a plaintiff properly followed the procedure for exhausting administrative remedies, but prison officials mishandled the grievance, the remedy is rendered unavailable. *See Dole*, 438 F.3d at 811. For example, if the ARB rejected an appeal on the basis of a grievance officer's misidentification of the inmate's prison number, a plaintiff could argue that this mistake rendered his attempts to exhaust his administrative remedies thwarted. *See Ross v. Bock*, No. 16-C-8672, 2017 WL 6758394, at *3 (N.D. Ill. Nov. 29, 2017).

Although Plaintiff argues that his administrative remedies were rendered unavailable because prison officials mishandled his grievances (Doc. 32, p. 3), there is no evidence in the record supporting this allegation. Instead, the record shows that the grievance counselor returned Plaintiff's grievance only one day after Plaintiff filed it and provided a written explanation for why the grievance was denied, as required by the

administrative rules governing Pinckneyville Correctional Center. (Doc. 36, Exh. 1). Plaintiff does not claim that he then appealed this grievance. Because there is no evidence that Plaintiff's grievance was mishandled and no evidence that Plaintiff appealed this grievance, the Court finds that this grievance remains unexhausted. *See, e.g.*, *Pozo*, 286 F.3d at 1023 (holding that unless a prisoner completes the administrative review process, exhaustion has not occurred).

**II.    Whether Plaintiff Exhausted his Administrative Remedies through Grievance 2784**

On a motion for summary judgment on the issue of exhaustion of administrative remedies, Defendants bear the burden of proving non-exhaustion. *See Jones v. Bock,* 549 U.S. 199, 216 (2007); *Maddox v. Love,* 655 F.3d 709, 720 (7th Cir. 2011). In order to satisfy that burden, Defendants must do more than point to a lack of evidence in the record. Instead, Defendants must affirmatively establish that the evidence conclusively shows that no reasonable fact-finder could find that Plaintiff was prevented from exhausting his administrative remedies. *See Branham v. Snow,* 392 F.3d 896, 906–907 (7th Cir. 2004). However, in their memorandum supporting their motion for summary judgment, Defendants summarily assert that Plaintiff failed to appeal any grievances during the relevant timeframe. (Doc. 24, p. 3). Defendants did not provide copies of Plaintiff's grievances or any responses to those grievances in their motion for summary judgment. Instead, Plaintiff provided the copies of the grievances he received from Defendants during Defendants' initial disclosures when responding to Defendants' motion for summary judgment. *See* (Doc. 32).

It is clear that Plaintiff filed grievance 2784 on September 2, 2019, as an emergency grievance. (Doc. 32, p. 11). It is also clear that officials denied grievance 2784 as a non-emergency. (Doc. 32, p. 11).[2] However, unlike grievance 2795, it is not clear whether grievance officials actually returned grievance 2784 to Plaintiff. In the grievance summary Plaintiff provided, officials note that as of September 6, 2019, the grievance was "being returned" to Plaintiff. (Doc. 32, p. 11). The only evidence that the grievance was successfully returned to Plaintiff comes from Ms. Hale's brief statement that the grievance was "sent back to" Plaintiff. (Doc. 26, Exh. 2, ¶ 8). The Court is therefore required to evaluate the competing testimony of Ms. Hale and Plaintiff, who alleges that his grievance was mishandled.

Ms. Hale and Plaintiff are equally conclusory when stating their respective claims. Ms. Hale merely states that Plaintiff's grievance was returned to him, while Plaintiff only alleges that officers mishandled his grievances. However, even if the Court finds in Plaintiff's favor, and presumes that officials did not return his grievance to him, Plaintiff's remedies were still not rendered unavailable because Defendants still had time in which they could have returned Plaintiff's grievance.

---

[2] As a preliminary matter, the Court notes that Plaintiff filed both grievances prior to the occurrence of events underlying his complaint against Defendants. *See* (Doc. 10, p. 2-3; Doc. 32, p. 11). In his complaint, Plaintiff alleges that both Defendants participated in a pattern of harassment and retaliation against him. (Doc. 10, p. 2-3). Inmates are not required to file multiple, successive grievances raising the same issues on the same facts if the inmate is alleging a continuing violation. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Because it is clear that grievance 2795 was not properly exhausted, the Court does not address whether that grievance alleges a continuing violation. However, there is no evidence to show whether grievance 2784 sufficiently alleges an ongoing violation because Defendants did not provide a copy of the grievance. The Court therefore infers, in favor of Plaintiff as the non-moving party, that grievance 2784 does allege a continuing violation, and examines whether Plaintiff appealed the violation, rather than dismissing the violation as unrelated to the events underlying the complaint.

If grievance personnel do not respond to an inmate's grievance, that inmate's administrative remedies are rendered unavailable. *See Dole*, 483 F.3d at 809. However, in order for an inmate's remedies to be unavailable due to lack of a response, an inmate must have no indication that officials are pursuing his case. *See Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020). For example, when prison officials state that they will inform an inmate of the status of their grievance within sixty days, "whenever possible," a period of silence exceeding six months nevertheless does not render remedies unavailable because officials may still be investigating a complicated case. *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004). In contrast, in *Reid*, the Seventh Circuit Court of Appeals found that a two-month period of silence rendered administrative remedies unavailable only because the inmate had no other reason to believe that anyone was "looking into" his grievance. 962 F.3d at 331.

Although prison officials may, in some circumstances, render a prisoner's administrative remedies unavailable by failing to respond to a grievance, a court nevertheless cannot find that the administrative process was not available when a prisoner rushed to court to file a lawsuit shortly after an administrative response was required. *See, e.g., Mlaska v. Shah,* Nos. 10-2255, 10-2401, 10-3795, 428 Fed. Appx. 642, 645 (7th Cir. June 29, 2011)(stating that prisoner failed to exhaust where, at best, he filed lawsuit one month after the warden's 60–day response period elapsed); *Jamison v. Franko*, No. 12-C-0242, 2013 WL 5166626, at *3 (N.D. Ill. Sept. 13, 2013)(noting that prisoner failed to exhaust where he filed suit less than two weeks after the 30–day response period had elapsed); *Gregory v. Santos*, No. 07-669-JPG-CJP, 2010 WL 750047, at *6 (S.D. Ill. Jan. 19,

2010)(stating that prisoner failed to exhaust where he gave the ARB "only a few days leeway beyond the six-month period"). Instead, prisoners must file suit only after a sufficient period of time has passed for a required administrative response. *See, e.g., Kyles v. Mathy,* No. 09–1084, 2010 WL 3025109, at *4 (C.D. Ill. Aug. 2, 2010)(noting that prisoner exhausted when he waited approximately one and a half months after the expiration of the two-month response deadline before moving on to the next step of grievance process); *Green v. Hartman,* No. 04-C-4304, 2006 WL 2699336, at *3 (N.D. Ill. Sept. 18, 2006)(finding that prisoner exhausted where he waited to file suit until two months after the expiration of the 30–day response deadline); *Goodman v. Carter,* No. 2000-C-948, 2001 WL 755137, at *3 (N.D. Ill. July 2, 2001)(noting that prisoner exhausted where he waited to file suit until 45–days after the warden's response was due). In Illinois, grievances officers are permitted sixty days in which to report his or her findings and recommendations to the CAO. *See* 20 ILL. ADMIN. CODE § 504.830(e).

Even assuming that his grievance was somehow mishandled, Plaintiff waited approximately fifty-six days after submitting grievance 2784 before filing suit. Officials still had four days in which to investigate and return Plaintiff's grievance. The underlying purpose of the PLRA is to permit officials to investigate and resolve an internal dispute with a prisoner. *See Woodford*, 548 U.S. at 93. The Court will not make an exception that serves to undermine the statutory purpose of the PLRA by reducing the time permitted for officials to investigate and return grievances. Plaintiff rushed to court before allowing

the time in which officials may consider Plaintiff's grievance to elapse.[3] Therefore, the Court finds that with respect to grievance 2784 the grievance process was not rendered unavailable to Plaintiff.

## Conclusion

For the above stated reasons, Defendants' motion for summary judgment for failure to exhaust administrative remedies (Doc. 23) is **GRANTED.** The Court **DISMISSES** Plaintiff's complaint without prejudice. The Court further **DIRECTS** the Clerk of the Court to enter judgment and close the case.

**IT IS SO ORDERED.**

**Dated: May 3, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.05.03 12:21:51 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

---

[3] The facts here are also dissimilar to *Reid* where there was no evidence that the prison administration was looking into Plaintiff's grievance. Here, it is clear that officials were "looking into" Plaintiff's claim. The summary of Plaintiff's grievances notes that officials had deemed grievance 2784 a non-emergency as of September 6, 2019. (Doc. 32, p. 11). This evidence thus indicates that officials had received Plaintiff's grievance and conducted an investigation, leaving Plaintiff with the responsibility to follow through on his grievance through the regular channels.